Matt Jacobsen, Pro Se
1311 La Loma Drive
Carson City, NV 89701
(408) 899-0838



## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Matt P. Jacobsen, | ) Case No.: 3:19-cv-00017-MMD-WGC |
| Plaintiff, | ) |
| v. | ) |
| RUSHMORE LOAN MANAGEMENT SERVICES, LLC; U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016- CTT; U.S. BANK NATIONAL ASSOCIATION; CLEAR RECON CORP, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO [3] MOTION TO DISMISS BY ALL DEFENDANTS**

Plaintiff Matt P. Jacobsen responds to MOTION TO DISMISS ("Motion"), filed by all Defendants.

As a threshold matter, the Motion contains a number of exhibits, however none of them are authenticated. The Motion itself is not verified.

Defendants wish the Court, in deciding whether the Complaint states a claim, to disregard the allegations of the Complaint, and instead rely on public records which are alleged in the Complaint to be inaccurate. The Motion states (p. 2):

1

> The publicly available and recorded documents are clear that: (1) US Bank as trustee of RMAC Trust is the current beneficiary of the deed of trust and holder of the note; (2) Clear Recon is the current duly appointed and substituted trustee of the deed of trust; and (3) Rushmore is the current servicer of the mortgage loan for US Bank as trustee of RMAC Trust.

However, at this 12(b)(6) stage, the allegations of the complaint are to be taken as true and viewed in the light most favorable to the non-moving party. Rowe v. Educ. Credit Mgmt. Corp.,559 F.3d 1028, 1029–30 (9th Cir. 2009)

> The Motion states (pp. 2, 12):
>
> Plaintiff simply cannot obtain quiet title or declaratory relief on a mortgage or deed of trust that he has not legitimately paid. … Additionally, Plaintiff cannot quiet title or receive clear title from the Deed of Trust unless it is paid off.

However, the Complaint (which at this stage is to be taken as true) alleges:

> 159. No lawful money is currently owed on the property.
> 160. Plaintiffs have paid any debt lawfully owed on the property.

Thus, Plaintiff is eligible for Quiet Title.

In addition, "[t]he tender requirement does not make sense" where "the borrower brings a quiet title claim against a party who, according to the allegations in the Complaint (which the court accepts as true), is not a mortgagee and who otherwise has no interest in the property whatsoever." See [48] Order in Case 1:11-cv-00714-JMS-BMK (Seabright, J) (Exhibit A). See also Klohs et al. v. Wells Fargo Bank, N.A., Civ. No. 12-00274 JMS-KSC, Order Granting Defendant Wells Fargo Bank N.A.'s Motion to Dismiss (Seabright, J.) (citing Amina v. BONYM (D. Haw. Aug. 9, 2012)).

"A number of courts have explicitly held that the tender rule applies only in cases seeking to set aside a completed sale, rather than an action seeking to prevent a sale in the first place." Pfeifer v. Countrywide Home Loans (2012), 211 Cal.App.4th 1250 (2012), 150 Cal. Rptr. 3d

2

673, LEXIS 1265, 61; Dimock v. Emerald Properties (2000), 81 Cal.App.4th 868, 877-878. Tender is not required "when the lender has not yet foreclosed and has allegedly violated laws related to avoiding the necessity for a foreclosure." Id.; Mabry v. Superior Court (2010) 185 Cal.App.4th 208, 225-226.

If the plaintiff's action "attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt." (Onofrio v. Rice, 55 Cal.App.4th at p. 424.)

The Motion contains a "Statement of Facts" (p. 3) which Defendants wish the Court to substitute for the allegations of the Complaint. However, at this 12(b)(6) stage, the allegations of the complaint – not those of the defendant's response – are to be taken as true and viewed in the light most favorable to the non-moving party. See Rowe.

The Motion states (p. 7):

> Defendants respectfully request that the Court take judicial notice of the public records attached hereto. ...    These public records are capable of accurate and ready determination from a source - namely the County Recorder and this Court - whose accuracy cannot be reasonably questioned.

However, for a fact to be judicially noticed, "indisputability is a prerequisite." Hennessy v. Penril Datacomm Networks, 69 F.3d 1344, 1354 (7th Cir. 1995). The power to judicially notice facts "is to be exercised by courts with caution. . . . Every reasonable doubt upon the subject should be resolved promptly in the negative." Brown v. Piper, 91 U.S. 37, 42-43 (1875).

The Motion never requests the Court to take judicial notice of any **facts**. The factual "matters" appropriate for judicial notice would be the existence of the public records in question, and the language used, but not the truth (or falsity) of their contents.

3

"Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." Joslin v. HA.S. Ins. Brokerage, 184 Cal. App. 3d 369, 374 (1986). "[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced there from, since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow there from." (citations omitted). Mangini v. R. J Reynolds Tobacco Co., 7 Cal. 4111 1057, 1062 (1994) (emphasis added). While courts can take judicial notice of public records, they do not take notice of the truth of matters stated therein. Love v. Wolf, 226 Cal. App. 2d 3 78, 403 (1964). In addition, "when judicial notice is taken of a document ... the truthfulness and proper interpretation of the document are disputable." StorMedia, Inc. v. Superior Court, 20 Cal. 4111 449, 457, fn. 9 (1999). A California court considered the scope of judicial review of a recorded document in Poseidon Development, Inc. v. Woodland Lane Estates, LLC, 152 Cal.App.4th 1106 (2007):

> [T]he fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. For example, the First Substitution recites that Shanley 'is the present holder of beneficial interest under said Deed of Trust.' By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact, because it is hearsay and it cannot be considered not reasonably subject to dispute." (Id. at p. 1117.)

See also Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that district court **improperly** took judicial notice of disputed facts recited within public record documents).

"Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" Premier Growth Fund v. Alliance Capital Mgmt., 435 F.3d 396, 401 n.15 (3d Cir. 2001); accord

4

Heliotrope Gen. Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.118 (9th Cir. 1999) (taking judicial notice "that the market was aware of the information contained in news articles submitted by the defendants.").

"These publications meet the standards for admissibility set forth in Federal Rule of Evidence 201(b). Accordingly, we take judicial notice of them solely as an indication of what information was in the public realm at the time." Von Saher v. Norton Simon Museum of Art at Pasadena, 578 F.3d 1016, 1022 (9th Cir. August 19, 2009). Further,

> "the Museum fails to point to any authority which holds that a motion to dismiss based on a statute of limitations may be granted on the basis of facts judicially noticed, rather than facts apparent on the face of the complaint. ... Unless it is clear that the complaint could not be saved by amendment, dismissal with prejudice and without leave to amend is not appropriate. Accordingly, Saher's complaint should not have been dismissed without leave to amend."

Id. at 1031.

In United States v. 14.02 Acres of Land, the District Court took judicial notice of the Department of Energy National Transmission Grid Study (May 2002), and

> "it referred to the report only as background material, without relying on it to resolve any factual dispute. We therefore conclude that the district court did not abuse its discretion in taking judicial notice of the DOE Study for the limited purpose for which the court considered it."

The case of Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n. 1 (9th Cir 2004) was [107] dismissed with prejudice after [94] notice of voluntary dismissal by the plaintiff. On appeal, the key phrase is:

> [Defendant Las Vegas] Events has filed an **unopposed motion** for judicial notice of an unredacted copy of the licensing agreement in effect at the time the district court ruled on the joinder motion, as well as of the current licensing agreement. We grant the motion. These licensing agreements are documents of the University System, a state entity.

Footnote 1 states:

5

> The district court record includes only a redacted License Agreement indicating that Events contracted with University System for permission to present the Rodeo at the Center every year from 1993 through 2000. The License Agreement that is currently in effect was not part of the district court record. Events has filed **an unopposed motion** for judicial notice of an unredacted copy of the licensing agreement in effect at the time the district court ruled on the joinder motion, as well as of the current licensing agreement. We grant the motion. These licensing agreements are documents of the University System, a state entity. Under Federal Rule of Evidence 201, we may take judicial notice of the records of state agencies and other **undisputed matters** of public record. See <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice matters of public record **unless the matter is a fact** subject to reasonable dispute); <u>Kottle v. N.W. Kidney Ctrs.</u>, 146 F.3d 1056, 1064 n. 7 (9th Cir.1998) (holding that state health department records were properly judicially noticed); <u>Mack v. S. Bay Beer Distribs., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) (stating that a court may take judicial notice of records and reports of state administrative bodies), overruled on other grounds by <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

<u>Disabled Rights</u> relies on <u>Lee v. City of Los Angeles</u>, which reversed judicial notice:

> More importantly, the district court's decision **to dismiss** plaintiffs' federal claims was rooted in defendants' factual assertions. **In granting defendants' motions, the [district] court** assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, **took judicial notice of the truth of disputed factual matters**, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs. **We therefore also reverse** the district court's dismissal of plaintiffs' § 1983 claims ...

At any rate, the proposition (that "a court may judicially notice matters of public record" such as deed of trust, substitution of trustee, election to sell and other recorded documents) is ambiguous as it is not clear whether the <u>Disabled Rights</u> court took judicial notice of the "matters of public record" (i.e. the existence of the documents) or of the truth of their contents.

To the extent that the contents of Defendants' documents are not alleged in the Complaint, the <u>Branch</u> rule does not apply to those documents. See <u>Branch v. Tunnell</u>, 14 F.3d 449, 453 (9th Cir. 1994):

> ... **documents whose contents are alleged in a complaint** and whose authenticity no party questions, but which are not physically attached to the pleading, may be **considered** in ruling on a Rule 12(b)(6) ...

6

To "consider" means to examine a document (e.g. to determine whether it is defamatory), not to assume its contents true. Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005).

Here, the contents of the documents at issue are not alleged in the SAC, therefore the rule of Branch does not apply to those documents.

The Court may take judicial notice of the dates, parties, and legally operative language of these documents, **but not the truth of various factual representations made in the documents**. Permito v. Wells Fargo Bank, 2012 WL 1380322, *2 (N.D. Cal. Apr. 20, 2012).

The Ninth Circuit, in the 14.02 Acres case, stated:

> [10] The district court also did not abuse its discretion in taking judicial notice of the Department of Energy National Transmission Grid Study (May 2002) ("DOE Study"), which was not included in the pleadings, and referring to it as background material in its order granting the government's motion for judgment on the pleadings. ... Judicial notice is appropriate for records and "reports of administrative bodies." Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1954). The district court considered the DOE Study, which is clearly a "report[ ] of [an] administrative bod[y]." Id. Further, it **referred to the report only as background material, without relying on it to resolve any factual dispute. We therefore conclude** that the district court did not abuse its discretion in taking judicial notice of the DOE Study for the limited purpose for which the court considered it.

The Ninth Circuit explicitly stated that its approval of the district court's judicial notice of the public record was because it "referred to the report only as background material, without relying on it to resolve any factual dispute." Here, by contrast, Defendants wish to use the disputed records to resolve a factual dispute.

> The Motion states (p. 8):
>
> The Quiet Title claim in the Current Lawsuit involves the same real property, the same Deed of Trust, and the same default stemming back to February 2010 when Plaintiff stopped making payments on his mortgage loan. Plaintiff's Quiet Title claims were dismissed with prejudice in the First Lawsuit and the Second Lawsuit.

7

However, the allegations of the Complaint in the Current Lawsuit are different from the allegations of the First or Second Lawsuit. See paragraphs 159-160, quoted above.

> The Motion states (pp. 9, 17):
>
> In the First Lawsuit, this Court dismissed the RESPA claim, albeit without prejudice, because Plaintiff's purported Qualified Written Request was [not] a statement of reasons why there was a servicing error. ... Plaintiff once again merely and over broadly requests biographical data concerning the loan's history ... this was not a proper Qualified Written Request requiring a response as it did not relate to the servicing of Plaintiff's loan.

However, under 12 U.S.C. § 2605(e)(1)(B)(ii), a qualified written request must EITHER "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error" OR must "provide[] sufficient detail to the servicer regarding other information sought by the borrower." ("Sufficient," one presumes, to enable the servicer to locate the sought-after information.)

It should be clear that Plaintiff's RESPA requests fit the second qualification, as they "provide[] sufficient detail to the servicer regarding other information sought by the borrower." The RESPA requests in question are:

> 1. A full, double sided, certified "true and accurate" copy of the original promissory note with all allonges.
> 2. The security instrument.
> 3. All assignments of the security instrument.
> 4. Full name, address and telephone number of the actual entity that funded the transaction.
> 5. Full name of Trust where the Note Number is trading, or has traded, and the identifying Series of Certificates. (Note: If the note number is being traded in a Fannie Mae Trust or Freddie Mac Trust, please provide all information to identify the Trust (i.e. Fannie Mae Pool Number, CUSIP Number, REMIC or SMBS Trust Number and Trust Class/Tranche).
> 6. Full name, address, and telephone number of the Trustee.
> 7. Full name, address, and telephone number of the Custodian of my original Promissory Note, including the name, address and telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In

8

Lending Act.
8.    Full name, address, and telephone number of the Custodian of my original Security Instrument, including the name, address and telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act.
9.    A physical location (address) of the original promissory note, original security instrument, and all assignments of the security instrument, and a contact name and phone number of someone who can arrange for inspection of said documents.
10.   Full name, address and telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for this account.
11.   The electronic MERS number assigned to this account if this is a MERS Designated Account.
12.   Proof of true sale of the note from alleged Lender to investors, by showing: Wire transfer document(s), and/or Signed purchase and sale agreement(s), Bank statements or similar documentation.
13.   The MERS Milestone Report, if the note number and security instrument was tracked by Mortgage Electronic Registration Systems. I need to see the audit trail of the alleged transfer in ownership and alleged transfer in security interest.
14.   A complete audit history from alleged loan origination, showing all payments in both directions, the dates payments were applied, and to what internal accounts (i.e. principal, interest, suspense, escrow, etc.) payments were applied.
15.   A complete and itemized statement of all advances or charges against this account.
16.   A complete and itemized statement of the escrow for this account, if any, from the date of the note origination to the date of your response to this letter.
17.   Have you purchased and charged to the account any Force-Placed Insurance?
18.   A complete and itemized statement from the date of the note origination to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.
19.   A complete and itemized statement from the date of the note origination to the date of your response to this letter of any suspense account entries and/or any corporate advance entries related in any way to this account.
20.   A complete and itemized statement from the date of the loan to the date of your response to this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.
21.   A statement/provision under the security instrument and/or note that authorizes charging any such fee against the account.
22.   Copies of all property inspection reports and appraisals, broker price opinions, and associated bills, invoices, and checks or wire transfers in payment thereof.
23.   Complete copy of any transaction report(s) indicating any charges for any "add on products" sold to the debtors in connection with this account from the date of the note origination to the date of your response to this letter.

9

      24.    Complete and itemized statement of any late charges added to this account from the date of the note origination to the date of your response to this letter.
      25.    Complete and itemized statement of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan, from the date of the note origination to the date of your response to this letter.
      26.    Please give me a written itemization of the entire amount I must pay.
      27.    Complete, itemized statement of the current amount needed to pay-off the alleged "loan" in full.
      28.    Verification of any notification provided to me of a change in servicer.

All of the above requests, with the possible exceptions of 1, 12, and 14 (which request documents instead of information), provide "sufficient detail to the servicer regarding other information sought by the borrower."

      The Motion states (p. 9):

      This Court has twice now told Plaintiff that these sorts of inquiries are not appropriate Qualified Written Requests and the outcome should be the same this third time around.

However, the Court is not the law; the statutes are clear that a QWR need only provide "sufficient detail to the servicer regarding other information sought by the borrower." And whatever the Court may tell the parties, the Ninth Circuit may disagree. Plaintiff does not wish to give up and thus waive the issue.

      In addition, res judicata does not apply as the claims are different: the QWR was sent to a different servicer (the servicer for the First Lawsuit was HSBC MORTGAGE CORPORATION (USA) followed by HSBC BANK USA, N.A. and the servicer for the Second Lawsuit was PHH MORTGAGE CORPORATION and the current servicer is Rushmore Loan Management Services), and the servicer's principal is different (Housekey Financial Corporation for the First and Second Lawsuits and U.S. BANK NATIONAL ASSOCIATION or in the alternative U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT

10

SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT for the Current Lawsuit) and the trustees are different (QUALITY LOAN SERVICE CORPORATION for the First Lawsuit and CLEAR RECON CORP. for the Second Lawsuit and the Current Lawsuit), and in any event the fact of mailing one letter is not the fact of mailing another letter on a different date, even if the letters were the same, which they are not.

"The meaning of "privity" for res judicata purposes may be elusive." Settle v. Beasley, 309 N.C. 616, 620, 308 S.E.2d 288, 290 (1983). "Indeed, 'there is no definition of the word "privity" which can be applied in all cases.' " Hales v. N.C. Insurance Guaranty Assn., 337 N.C. 329, 333–34, 445 S.E.2d 590, 594 (1994) (quoting Masters v. Dunstan, 256 N.C. 520, 524, 124 S.E.2d 574, 577 (1962)). "In general, 'privity involves a person so identified in interest with another that he represents the same legal right.' " Whitacre P'ship v. BioSignia, Inc., 358 N.C. 1, 36, 591 S.E.2d 870, 893 (2004) (quoting Tucker, 344 N.C. at 417, 474 S.E.2d at 130). "The prevailing definition that has emerged from our cases is that 'privity' for purposes of res judicata and collateral estoppel 'denotes a mutual or successive relationship to the same rights of property.' " Hales, 337 N.C. at 334, 445 S.E.2d at 594 (quoting Settle, 309 N.C. at 620, 308 S.E.2d at 290) (other citations omitted). There is no definition of "privity" which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same. St. Louis Baptist Temple, 605 F.2d at 1174.

> The Motion states (p. 9):
>
> Plaintiff again alleges that there has been no deficiency in performance or payment, that Clear Recon is not the proper trustee under the Deed of Trust and

11

> that the beneficiary of the Deed of Trust does not have possession of or is not entitled to enforce the secured note. ... However, this Court found to the contrary in dismissing the NRS 107.080 claim in the Second Lawsuit. (See Second Lawsuit, ECF No. 71 at 7:13-25).

However, the [71] Order states:

> Plaintiffs allegation that HSBC does not possess the note does not support a claim for violation of NRS § 107.80. HSBC not need to produce the note to the Property in order to proceed with a non-judicial foreclosure. See NRS § 107.080. As long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is no defect in the Nevada foreclosure.

That Order does not address whether the party attempting to foreclose is "not entitled to enforce the secured note." However, the Complaint in the Current Lawsuit alleges at ¶ 172 that U.S. Bank as Trustee "is not entitled to enforce the note." Moreover, in the Current Lawsuit, the Complaint alleges that the foreclosing trustee (Clear Recon) is neither the original trustee nor has been substituted by the holder of the note or the holder's nominee:

> 169.  The foreclosing trustee (Clear Recon) is not the original trustee.
> 170.  The foreclosing trustee has not been substituted by the holder of the note.
> 171.  The foreclosing trustee has not been substituted by the holder's nominee.

The Motion states (p. 10):

> ... in dismissing the first two lawsuits, this Court has already held that foreclosure efforts do not constitute debt collection activity.

However, the Complaint alleges debt collection activity that is not limited to foreclosure attempts:

> 252.  On 7/11/2018, Rushmore mailed a debt collection letter to Plaintiff.
> 253.  Plaintiff timely disputed the debt on September 4, 2018.
> 254.  Rushmore failed to respond timely.
> 255.  Rushmore still continues debt collection activities beyond lawful foreclosure.

The Motion states (p. 11):

12

>Rushmore is also in privity with HSBC Bank, HSBC Mortgage, and the prior loan servicer PHH Mortgage [because] Rushmore's interest is directly tied to the interest of the current and prior beneficiaries of the Deed of Trust.

However, this relationship between Rushmore and the principals does not imply privity between Rushmore and Rushmore's predecessors as servicer.

>The Motion states (p.12):
>
>Plaintiff does not dispute that the underlying Deed of Trust was voluntarily given as a valid encumbrance on his Property, which is the actual claim or encumbrance on the Property.

However, there is no support in the Complaint for this statement.

>The Motion states (p.12):
>
>The assignments merely provide record notice as to who is the beneficiary of the Deed of Trust and are not independent claims to title.

However, an invalid Assignment to a specific defendant would support a Quiet Title claim **as against that defendant**.

>The Motion states (p.16):
>
>... the operative Notice of Default recorded in October 2018 states the deficiency in performance as required by NRS 107.080(3) (2017).

However, the Complaint alleges that the October 2018 Notice of Default is false as there has been no state a deficiency in performance, and therefore the Notice cannot state such deficiency:

>87. There has been no "deficiency in performance or payment" (NRS 107.080 2.(a)(2),(b)).
>88. The foreclosing trustee (Clear Recon) is not the original trustee.
>89. The foreclosing trustee has not been substituted by the holder of the note.
>90. The foreclosing trustee has not been substituted by the holder's nominee.[1]

---

[1] See Gomez v. Countrywide Bank, FSB, 2009 WL 3617650, at *2 (D. Nev. Oct.26, 2009) (as long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is no defect in the Nevada foreclosure).

13

91. HSBC BANK USA, N.A. does not have actual or constructive possession of the note and is not entitled to enforce the note.

## Conclusion

The Complaint states claims upon which relief may be granted, and should not be dismissed. In the alternative and without waiving the foregoing, opportunity to amend should be given.

Dated this 12th day of February, 2019

/s/ _Matt Jacobsen_
Matt Jacobsen, Pro Se

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the date last written below I served a true copy of the foregoing on the following parties by U.S. first class mail:

RUSHMORE LOAN MANAGEMENT SERVICES, LLC
U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT
U.S. BANK NATIONAL ASSOCIATION
CLEAR RECON CORP
c/o Laurel I. Handley
c/o Jory C. Garabedian
ALDRIDGE PITE, LLP
520 South 4th St., Suite 360
Las Vegas, Nevada 89101
E-Mail: lhandley@aldridgepite.com

Dated this 12th day of February, 2019

/s/ _Matt Jacobsen_
Matt Jacobsen, Pro Se

14